Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH TISO, <br><br> Plaintiff, <br><br> vs. <br><br> HEALTHCARE TRUST OF AMERICA, INC., W. BRADLEY BLAIR II, VICKI U. BOOTH, H. LEE COOPER, WARREN D. FIX, JAY P. LEUPP, RESHMA BLOCK, and CONSTANCE B. MOORE <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Joseph Tiso ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Healthcare Trust Of America, Inc. ("HTA" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Healthcare Realty Trust Inc., Inc. ("Parent"), merger vehicle HR Acquisition 2, LLC. ("Merger Sub" and collectively with Parent, "HR" and collectively with the Company and the Board, the

"Defendants"), Parent as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 28, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms in the Merger Agreement, each outstanding share of Common Stock, will be converted into the right to receive 1 share of Class A Common Stock, of the Company (the "Company Common Stock" and, such consideration, the "Merger Consideration"). In addition, subject to the closing of the Merger and the other transactions contemplated therein, the holders of shares of Company Common Stock issued and outstanding on the last business day prior to the closing date of the Merger will receive a special distribution in the amount of $4.82 in cash per share of Company Common Stock held on such date (the "Special Distribution") for a total consideration of approximately $35.08 per HTA share, based upon HR's closing stock price of $30.26 on February 24, 2022.

3.      Thereafter, on May 2, 2022, HTA filed a Registration Statement on Form S-4 (the "Registration Statement"), with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of other reasons.  Significantly, the Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" which resulted in the entry into the Proposed Transaction which had no collar mechanism protection for the merger consideration which is largely composed of HR stock.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.     In violation of the Exchange Act, on May 3, 2022, Defendants caused to be filed the materially deficient Registration Statement.  The Registration Statement is materially deficient, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for HTA and HR provided by HTA management to the Board's financial advisor J.P. Morgan Securities LLC ("J.P. Morgan") and HR's financial advisor Citigroup Global Markets Inc. ("Citi"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by J.P. Morgan, and/or Citi and provided to the Company and the Board.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.     Plaintiff is a citizen of South Carolina and, at all times relevant hereto, has been a HTA stockholder.

9.     Defendant HTA is the largest dedicated owner and operator of healthcare real estate in the United States, comprising approximately 25.1 million square feet, with $7.4 billion invested. HTA is incorporated under the laws of the State of Maryland and has its principal place of business at 16435 N. Scottsdale Road, Suite 320, Scottsdale, Arizona 85254.  Shares of HTA common stock are traded on the New York Stock Exchange under the symbol "HTA".

10.     Defendant W. Bradley Blair II ("Blair") has been a Director of the Company at all relevant times.  In addition, Preston serves as the Company's Chief Executive Officer ("CEO").

11.     Defendant Vicki U. Booth ("Booth") has been a director of the Company at all relevant times.

12.     Defendant H. Lee Cooper ("Cooper") has been a director of the Company at all relevant times.  In addition, Friedberg is the Company's Founder.

13.    Defendant Warren D. Fix ("Fix") has been a director of the Company at all relevant times.  In addition, Butler is the Company's Chairman of the Board of Directors.

14.    Defendant Jay P. Leupp ("Leupp") has been a director of the Company at all relevant times.

15.    Defendant Reshma Block ("Block") has been a director of the Company at all relevant times.

16.    Defendant Constance B. Moore ("Moore") has been a director of the Company at all relevant times.

17.    Defendants identified in ¶¶ 10 - 16 are collectively referred to as the "Individual Defendants."

18.    Defendant Parent is a real estate investment trust that integrates owning, managing, financing and developing income-producing real estate properties associated primarily with the delivery of outpatient healthcare services throughout the United States. Shares of Parent common stock are traded on the Nasdaq Stock Exchange under the symbol "HR".

19.    Defendants Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

23.    Healthcare Trust of America, Inc. (NYSE: HTA) is the largest dedicated owner and operator of MOBs in the United States, comprising approximately 25.1 million square feet of GLA, with $7.4 billion invested primarily in MOBs. HTA provides real estate infrastructure for the integrated delivery of healthcare services in highly-desirable locations. Investments are targeted to build critical mass in 20 to 25 leading gateway markets that generally have leading university and medical institutions, which translates to superior demographics, high-quality graduates, intellectual talent and job growth. The strategic markets HTA invests in support a strong, long-term demand for quality medical office space. HTA utilizes an integrated asset management platform consisting of on-site leasing, property management, engineering and building services, and development capabilities to create complete, state of the art facilities in each market. This drives efficiencies, strong tenant and health system relationships, and strategic partnerships that result in high levels of tenant retention, rental growth and long-term value creation. Headquartered in Scottsdale, Arizona, HTA has developed a national brand with dedicated relationships at the local level. Founded in 2006 and listed on the New York Stock Exchange in 2012, HTA has produced attractive returns for its stockholders that have outperformed the US REIT index.

24.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 5, 2021 Earnings Call announcing its 2021 Q3 financial results, the Company highlighted such milestones as a reported Same-Property Cash Net Operating Income ("NOI") growth of 2.5% compared to

Q3 2020. Additionally, the company reported Funds From Operations ("FFO"), as defined by NAREIT, of $0.44 per diluted share, an increase of 41.9% compared to Q3 2020.

25.     Speaking on these positive results, CEO Defendant Preston commented on the Company's positive results as follows, "Our results demonstrate HTA's strength as a Company," …... "I continue to be inspired by the leadership that is exhibited throughout the organization as a whole.  We are focused on being the leader in the medical office space, and I remain confident in the Company's ability to continue to deliver value to our tenants and shareholders by capitalizing on strategic partnership opportunities to leverage our expertise and enhance our capabilities, allowing us to support the healthcare community and generate growth."

26.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by HTA.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

27.     Despite this upward trajectory, the Individual Defendants have caused HTA to enter into the Proposed Transaction without providing requisite information to HTA stockholders such as Plaintiff.

***The Flawed Sales Process***

28.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29.     Notably, the Registration Statement fails to provide adequate information regarding Elliott Investment Management L.P. ("Elliot"), including Elliot's specific relationship with the Company and what effect, if any, Elliot had on the sales process.

30.     Additionally, the Registration Statement fails to provide adequate information regarding why the Board agreed to a Proposed Transaction which did not provide a collar

mechanism to prevent the stock consideration portion from falling below a realm of reasonableness.

31.    Moreover, the Registration Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and HR and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.    It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

33.    On February 28, 2022, HTA and HR issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **NASHVILLE, Tennessee and SCOTTSDALE, Arizona, February 28, 2022** — Healthcare Realty Trust Incorporated (NYSE:HR) ("Healthcare Realty" or "HR") and Healthcare Trust of America, Inc. (NYSE: HTA) ("Healthcare Trust of America" or "HTA") today announced that they have agreed to enter into a strategic business combination. HTA shareholders will receive a total implied value of $35.08 per share comprised of a special cash dividend of $4.82 per share and a transaction exchange ratio of 1:1 based on HR's unaffected price of $30.26 on February 24, 2022. This transaction brings together two of the largest owners of medical office buildings, creating the preeminent, pure-play medical office building REIT and positions the combined company (the "Company") to create long-term shareholder value. The Company will have a pro forma equity market capitalization of approximately $11.6 billion and a total enterprise value of $17.6 billion based on the implied values at market close on February 24, 2022.
>
> **Leadership and Organization**
>
> The Company will be led by the Healthcare Realty management team, with Todd Meredith as President and Chief Executive Officer and Kris Douglas

as Executive Vice President and Chief Financial Officer. Upon completion of the transaction, the new Company will continue to operate with the Healthcare Realty name and trade on the NYSE under the ticker symbol HR.

The Company will have a highly qualified, diverse Board of Directors comprised of nine existing directors of Healthcare Realty, three members of the Healthcare Trust of America Board, and one new member to be mutually agreed upon by the existing HR and HTA directors and appointed prior to closing of the transaction. Knox Singleton, Chairman of the Healthcare Realty Board, will be Chairman of the Company and Brad Blair, Chairman of the Healthcare Trust of America Board, will be appointed Vice Chairman.

Upon completion of the transaction, the Company's headquarters will be based in Nashville, with additional corporate offices in Scottsdale and Charleston. The Company will implement a detailed integration process to ensure continuity for tenants, employees and all stakeholders.

"We are pleased to announce this strategic transaction, which unites two highly complementary medical office portfolios and represents a rare opportunity to create a sector-leading REIT in terms of both size and quality. We believe all shareholders will benefit from the Company's expanded national footprint from HR's Seattle portfolio to HTA's Boston portfolio. The Company will have unmatched market scale in concentrated clusters, meaningful corporate and operational synergies, and a larger development pipeline. We believe this transaction will be accretive through near term synergies with additional value from operational upside. It will also strengthen the combined balance sheet, enhance liquidity and improve access to capital. This combination provides a significant value creation opportunity for shareholders," stated Todd Meredith, President and Chief Executive Officer, Healthcare Realty.

"This transformative transaction joins two premier real estate companies with a combined value that we believe is much greater than the sum of its parts, with the operational and financial scale necessary to compete and drive sustainable value creation. HTA shareholders will realize an attractive premium via a special cash dividend while being able to fully participate in the future growth prospects of a powerful, sector leading MOB REIT, led by a seasoned, well-respected management team. This transaction is the culmination of a thorough strategic review process and we are pleased with the result for our shareholders, employees and tenants. We are confident this is the best path forward for HTA," stated Brad Blair, Chairman of the Board, Healthcare Trust of America.

**Key Benefits**

The combination of Healthcare Realty and Healthcare Trust of America is expected to result in significant strategic, operational and financial benefits to shareholders, including:

- Creates Preeminent, High Quality MOB REIT: With 727 properties totaling 44 million square feet, the Company will be the largest pure-play MOB REIT, with nearly double the square footage of the next largest MOB portfolio. The Company will own the largest portfolio of on or adjacent to hospital campus properties comprising 28.2 million square feet. 94% of the portfolio's square feet will be in top 100 MSAs.

- Achieves Critical Scale with Enhanced Clusters: The Company will own over 1 million square feet in 14 distinct markets, representing over 50% of the portfolio's square feet. Nearly 80% of the portfolio's square footage will be located in markets with over 500,000 square feet. Meaningful scale in markets drives operational efficiencies for tenants and incremental leasing and investment volumes. Across the entire portfolio, the Company will have 147 clusters, each comprised of two to eleven properties within two miles of each other and averaging approximately 195,000 square feet per cluster.

- Broadens Relationships and Portfolio Diversification: The portfolio will include properties associated with 57 of the Top 100 health systems in the U.S. on or adjacent to 231 hospital campuses. The top 10 tenants in the portfolio will represent 22.6% of the portfolio's square feet with no single tenant representing more than 5.2%.

- Expands Development Pipeline: The Company will have an embedded development pipeline in excess of $2 billion, concentrated in high growth markets such as Seattle, Houston, Denver, Dallas and Raleigh.

- Material Cost Synergies: The Company expects to realize annual run rate cost synergies of $33 – 36 million within 12 months of closing from the elimination of duplicative corporate and public company costs.

- Accretive with Operational Upside: The transaction is expected to be accretive to Healthcare Realty's per share results assuming full realization of synergies. Longer term, the Company expects to benefit from enhanced leasing volumes to drive occupancy and rent growth across the portfolio as well as property level cost savings.

- Greater Access to Capital and Balance Sheet Strength: The Company intends to maintain a flexible, investment grade-rated balance sheet with a well staggered debt maturity profile. With enhanced size and scale, the Company expects to benefit from greater liquidity, higher index weightings and reduced borrowing costs over time.

**Transaction Structure**

At closing, each share of HR common stock will be exchanged for one share of HTA common stock, at a fixed ratio. In addition, a special cash dividend of $4.82 per share will be distributed to HTA shareholders. Taken together and based on HR's share price at the close of markets on February 24, 2022, HTA shareholders will realize an implied value of $35.08 per HTA share, representing an 18.2% premium to HTA's share price at the close of markets on February 24, 2022. This combination is structured as a reverse merger whereby Healthcare Trust of America will be the corporate successor and the Company's name will continue as Healthcare Realty Trust Incorporated. Pro forma for the transaction HR and HTA shareholders will own 39% and 61% of the Company, respectively.

The special cash dividend of approximately $1.1 billion will be financed through joint venture transactions and asset sales. JPMorgan Chase Bank, N.A. has provided a commitment letter to Healthcare Trust of America for a $1.7 billion debt financing for the transaction upon the terms and conditions set forth in the letter.

The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including the approval of both Healthcare Realty and Healthcare Trust of America shareholders. The transaction was unanimously approved by the Board of Directors of HR and the Board of Directors of HTA.

***Potential Conflicts of Interest***

34.     The breakdown of the benefits of the deal indicate that HTA insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of HTA.

35.     Additionally, Company insiders, currently own large, illiquid portions of Company stock as well as large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company, as follows:

| Director or Officer | Number of Shares of Company Common Stock* | Value of Shares of Company Common Stock | Number of Company Restricted Shares** | Value of Company Restricted Shares | Aggregate Value*** |
|---|---|---|---|---|---|
| Peter N. Foss | 19,630 | $ 597,930 | 112,959 | $ 3,440,731 | $4,038,661 |
| Robert A. Milligan | 140,911 | $ 4,292,149 | 74,485 | $ 2,268,813 | $6,560,962 |
| Amanda L. Houghton | 161,408 | $ 4,916,488 | 55,293 | $ 1,684,225 | $6,600,712 |
| W. Bradley Blair II | 135,296 | $ 4,121,116 | 24,893 | $ 758,241 | $4,879,357 |
| Reshma Block | 327 | $ 9,960 | 1,306 | $ 39,781 | $ 49,741 |
| Vicki U. Booth | 12,377 | $ 377,003 | 7,301 | $ 222,388 | $ 599,392 |
| H. Lee Cooper | 3,350 | $ 102,041 | 5,738 | $ 174,779 | $ 276,820 |
| Warren D. Fix | 137,386 | $ 4,184,778 | 7,300 | $ 222,358 | $4,407,136 |
| Jay P. Leupp | 3,350 | $ 102,041 | 5,738 | $ 174,779 | $ 276,820 |
| Constance B. Moore | 327 | $ 9,960 | 1,306 | $ 39,781 | $ 49,741 |

36.    Moreover, certain employment agreements with certain HTA executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($) [1] [2] | Equity [3] | Perquisites/ Benefits [4] | Total ($) [5] |
|---|---|---|---|---|
| Peter N. Foss | 1,638,114 | 3,693,759 | 0 | 5,331,873 |
| Robert A. Milligan | 3,114,419 | 2,435,660 | 32,625 | 5,582,704 |
| Amanda L. Houghton | 2,790,000 | 1,808,081 | 14,991 | 4,613,072 |

37.    The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.    Thus, while the Proposed Transaction is not in the best interests of HTA, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

39.    On May 2, 2022, the HTA Board and HR caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

  a.  Adequate reasoning as to why the Board agreed to a Proposed Transaction with no collar mechanism to ensure the stock portion of the merger consideration remained in the realm of reasonableness;

  b.  Adequate information regarding Elliot and its relationship to the Company as well as its affect, if any, on the sales process;

  c.  Whether the confidentiality agreements entered into by the Company with HR differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

  d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

potentially interested third parties throughout the sales process, including HR, would fall away; and

e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning HTA and HR's Financial Projections*

41.    The Registration Statement fails to provide material information concerning financial projections for HTA and HR provided by HTA and HR management to the Board, J.P. Morgan, and Citi and relied upon by J.P. Morgan and Citi in their analyses. The Registration Statement discloses management-prepared financial projections for the Company and HR which are materially misleading.

42.    The Registration Statement should have, but fails to provide, certain information in the projections that HTA and HR management provided to the Board and J.P. Morgan and Citi. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del.

Ch. 2007)

43.     With regard to the *Company Prospective Financial Information* prepared by HTA Management, the Registration Statement fails to disclose material line items for the following metrics:

a.      Net Operating Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: cash income from real estate operations and property operating expenses;

b.      EBITDA, including all underlying necessary metrics, adjustments, and assumptions utilized, including specifically: earnings, interest, taxes, depreciation and amortization (not burdened by non-cash stock-based compensation expense, asset impairment and valuation allowances).

c.      Funds from Operations, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income, gains (or losses) from sales of property, depreciation and amortization, impairment, adjustments for unconsolidated partnerships and joint ventures, adjustments for acquisition-related costs, acceleration of debt issuance costs, and debt extinguishment costs;

d.      Funds Available for Distribution, including all underlying necessary metrics, adjustments, and assumptions, including specifically: non-real estate depreciation and amortization, deferred financing fees amortization, stock-based compensation expense and provision for bad debts, net; straight-line rent income, maintenance capital expenditures, second generation tenant improvements, capital expenditures, and leasing

commissions paid;

e.   Unlevered Free Cash Flows, including all underlying necessary metrics, adjustments, and assumptions, including specifically: general, administrative and corporate expenses, tenant improvements, broker fees and recurring capital expenditures, value of acquisitions, dispositions, redevelopment and development, and the input used for working capital.

44.   With regard to the *HR Prospective Financial Information* Projections prepared by HR Management, the Registration Statement fails to disclose material line items for the following metrics:

a.   Net Operating Income, including all underlying necessary metrics, adjustments, and assumptions, including specifically: cash income from real estate operations and property operating expenses;

b.   EBITDA, including all underlying necessary metrics, adjustments, and assumptions utilized, including specifically: earnings, interest, taxes, depreciation and amortization (not burdened by non-cash stock-based compensation expense, asset impairment and valuation allowances);

c.   Funds from Operations, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income, gains (or losses) from sales of property, depreciation and amortization, impairment, adjustments for unconsolidated partnerships and joint ventures, adjustments for acquisition-related costs, acceleration of debt issuance costs, and debt extinguishment costs;

d.   Funds Available for Distribution, including all underlying necessary

metrics, adjustments, and assumptions, including specifically: non-real estate depreciation and amortization, deferred financing fees amortization, stock-based compensation expense and provision for bad debts, net; straight-line rent income, maintenance capital expenditures, second generation tenant improvements, capital expenditures, and leasing commissions paid;

e.    Unlevered Free Cash Flows, including all underlying necessary metrics, adjustments, and assumptions, including specifically: general, administrative and corporate expenses, tenant improvements, broker fees and recurring capital expenditures, value of acquisitions, dispositions, redevelopment and development, and the input used for working capital.

45.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46.    This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of J.P. Morgan, or Citi's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

48.     In the Registration Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.     With respect to the *Public Trading Multiples* analysis, the Registration Statement fails to disclose the following:

   a.   The specific metrics for each comparable companies calculated;

   b.   The specific inputs and assumptions used to determine the utilized multiple reference range of 15.1x-16.6x P/2022E FFO; and

   c.   The specific inputs and assumptions used to determine the utilized multiple reference range of 5.5% – 5.8% Implied Capitalization Rate.

50.     With respect to the *Selected Transaction Analysis,* the Registration Statement fails to disclose the following:

   a.   The specific metrics for each precedent transaction;

   b.   The date on which each precedent transaction closed;

   c.   The aggregate value of each precedent transaction;

   d.   The specific inputs and assumptions used to determine the utilized Implied Acquisition Capitalization Rate reference range for the Company of 4.9% – 5.6%.

51.     With respect to the *Discounted Cash Flow Analysis*, the Registration Statement

fails to disclose the following:

    a.   The specific inputs for the range of terminal values for each of the Company and HR;

    b.   The specific inputs and assumptions used to determine perpetual growth rates ranging from 2.25% to 2.75%;

    c.   The specific inputs and assumptions used to determine discount rates ranging from 6.65% to 7.15%;

    d.   The weighted average cost of capital of the Company and HR;

    e.   The specific inputs used for the present value of the unlevered free cash flow estimates for both the Company and HR.

52.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public HTA stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citigroup*

54.    In the Registration Statement, Citigroup describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55. With respect to the *Selected Public Companies Analyses*, the Registration Statement fails to disclose the following:

    a. The specific metrics for each selected public company; and

    b. The specific inputs and assumptions used to determine utilized multiple reference ranges of calendar year 2022 estimated FFO per share multiples of 15.3x to 23.6x;

    c. The specific inputs and assumptions used to determine utilized multiple reference ranges of calendar year 2022 estimated FAD per share multiples of 14.8x to 28.1x; and

    d. The specific inputs and assumptions used to determine utilized multiple reference ranges of implied cap rates of 4.1% to 6.2%.

56. With respect to the *Discounted Cash Flow Analysis HR*, the Registration Statement fails to disclose the following:

    a. The terminal values for HR calculated;

    b. The specific inputs and assumptions used to determine utilized exit cap rates ranging from 4.75% to 5.50%;

    c. The NOI for HR's terminal year calculated;

    d. The specific inputs and assumptions used to determine the utilized 3.0% growth rate to 2026E NOI; and

    e. The specific inputs and assumptions used to determine the utilized discount rates ranging from 7.21% to 8.02%.

57. With respect to the *Discounted Cash Flow Analysis The Company*, the Registration Statement fails to disclose the following:

    a. The terminal values for the Company calculated;

    b. The specific inputs and assumptions used to determine exit cap rates ranging from 4.75% to 5.50%;

    c. The NOI for the Company's terminal year calculated;

    d. The specific inputs and assumptions used to determine the utilized 3.0% growth rate to 2026E NOI;

    e. The specific inputs and assumptions used to determine the utilized discount rates ranging from 7.00% to 7.78%; and

    f. The specific value calculated for present values of cash flows.

58. With respect to the *Certain Additional Information* Section, the Registration Statement fails to disclose the following:

    a. The specific price targets utilized; and

    b. The specific identity of the Wall Street firms and/or analysts that created such analysis;

    c. The specific inputs and assumptions used to determine a range of exit capitalization rates of 4.75% to 5.50%; and

    d. The specific inputs and assumptions used to determine a range of discount rates of 7.21% to 8.02%.

59. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

60. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value

and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public HTA stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

61.     Plaintiff repeats all previous allegations as if set forth in full herein.

62.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

63.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

64.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

66.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

67.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

68.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

69.     Plaintiff repeats all previous allegations as if set forth in full herein.

70.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

71.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

72.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of HTA's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

73.    The Individual Defendants acted as controlling persons of HTA within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause HTA to engage in the wrongful conduct complained of herein. The Individual Defendants controlled HTA and all of its employees. As alleged above, HTA is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 10, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*